# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**DONNELL ROBINSON**  **PLAINTIFF**
**ADC #136685**

V.  NO. 4:20-cv-01187-LPR-ERE

**DEXTER PAYNE,** *et al.*  **DEFENDANTS**

## RECOMMENDED DISPOSITION

## I.  Procedure for Filing Objections

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If no objections are filed, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

## II.  Background

Plaintiff Donnell Robinson, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2*. Mr. Robinson claims that Dexter Payne, Wendy Kelley, Jared Byers, James Gibson, and

James Shipman[1] (ADC Defendants) failed to protect him from an assault in September 2017.[2]

Pending before the Court is the ADC Defendants' motion for summary judgment. *Doc. 60*. They argue that Mr. Robinson failed to fully exhaust his administrative remedies. Mr. Robinson has not responded to the motion, and the time for doing so has passed. *Docs. 63, 65*.

Based on the reasons stated below, the Court recommends that the ADC Defendants' motion for summary judgment *(Doc. 60)* be GRANTED.

### III. Discussion

#### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper

---

[1] The Clerk is instructed to update the docket sheet to reflect Defendant Shipman's full name – James Shipman.

[2] The Court previously dismissed Mr. Robinson's claims against the Doe Defendants based on his failure to timely identify and serve those Defendants. *Doc. 51*. The Court also previously dismissed Mr. Robinson's claim that Defendant Horan acted with deliberate indifference to his serious medical needs following the attack based on Mr. Robinson's failure to exhaust his administrative remedies. *Doc. 52*.

exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Robinson to satisfy the ADC's requirements for raising and exhausting the claims he is asserting in this lawsuit before bringing this action.[3]

### B. The ADC's Exhaustion Policy

At all times relevant to this action, ADC Administrative Directive 19-34 provided a three-step administrative grievance process requiring that inmates exhaust their administrative remedies at each level before filing a § 1983 lawsuit. *Doc. 60-2 at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-

---

[3]There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

level problem-solver within fifteen calendar days of the incident;[4] (2) a "Step Two" formal unit-level grievance raising that claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-11*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejection of an appeal. *Id. at 13*.

    Thus, to properly exhaust his administrative remedies with respect to the failure-to-protect claim asserted here, Mr. Robinson was required to present the claim in a timely filed grievance and appeal it through all three steps of the ADC's grievance process. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

---

[4] Under the ADC's grievance policy, an inmate's informal resolution at Step One does not become a formal grievance until Step Two, at which point a number is assigned. However, the same "Grievance Form" is used at Step One and Step Two. In this case and other cases, ADC officials and inmates frequently use the term "grievance" generically to refer to an inmate's initiation of the grievance process by filing a Step One informal resolution, without regard to whether the filing ever proceeds to the Step Two formal grievance stage. The Court does the same.

## C. Mr. Robinson's Grievances

The ADC Defendants submit the declaration of April Gibson, an ADC Inmate Grievance Officer. *Doc. 60-1*. Ms. Gibson states that she reviewed Mr. Robinson's grievance file and "did not find any grievance that exhausts Robinson's claims as to any ADC Defendant." *Id. at 7*. Mr. Robinson attached eleven unnumbered informal resolutions to his complaint. Ms. Gibson found no record that Mr. Robinson proceeded to Step Two, the formal grievance stage, with respect to any of those filings. *Doc. 60 at 7; Doc. 2 at 43[5], 63[6], 64, 143[7], 207, 208, 210[8], 216, 218, 219, 220.*

---

[5] On the top of the informal resolution that Mr. Robinson submitted on September 30, 2017, he wrote "gave back to me on the 10-9-2017 9:15 pm." *Id. at 43*. Mr. Robinson's note indicates that he believed that ADC officials did not timely respond to his informal resolution. Even if Mr. Robinson did not receive a timely response to his informal resolution, he could have proceeded to Step Two of the grievance process. The inmate grievance procedure specifically provides: "If the designated Problem Solver . . . has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step Two, the formal grievance, without completion of Step One." *Doc. 60-2 at 8*.

[6] According to Ms. Gibson, this grievance was marked VU-18-794, and ADC officials rejected it because Mr. Robinson had exceeded the weekly limit permitted by the ADC inmate grievance procedure. *Doc. 60-1 at 8*. Although there is no grievance number or note of rejection on this informal resolution, Mr. Robinson did not proceed to Step Two with regard to this grievance. Accordingly, he did not fully exhaust any of the claims raised against the ADC Defendants in that grievance. To the extent that Mr. Robinson might argue that he did not receive a timely response to his informal resolution, that did not prevent him from proceeding to Step Two of the grievance procedure. *Doc. 60-2 at 8*.

[7] According to Ms. Gibson, this grievance was marked VU-19-69. *Doc. 60-1 at 9*. On the grievance form provided to the Court, a grievance number has not been assigned. However, because Mr. Robinson complained about his failure to receive adequate medical care in this grievance, it is not relevant to the claims raised against the ADC Defendants in this lawsuit.

[8] According to Ms. Gibson, this grievance was marked MX-20-1132. *Doc. 60-1 at 10*. On the grievance form provided to the Court, a grievance number has not been assigned. However,

5

Furthermore, in seven of those informal resolutions, Mr. Robinson complained about inadequate medical care. *Doc. 2 at 143, 207, 210, 216, 218, 219, 220*. Accordingly, Mr. Robinson did not fully exhaust the failure-to-protect claims raised against the ADC Defendants in those unnumbered informal resolutions.

In addition, grievances VU-17-785, VU-17-786, VU-18-428, VU-18-683, and MX-20-96, also attached to the complaint, are medical grievances that do not relate to the claims Mr. Robinson raises against the ADC Defendants. *Doc. 2 at 50, 51, 68, 71, 128, 135, 201*.

On October 24, 2018, Mr. Robinson submitted grievance VU-17-790 complaining that Sergeant Washington failed to properly process the grievance that he filed regarding the assault at issue in this case. *Id. at 52*. The Warden/Center Supervisor's decision addressed Mr. Robinson's complaint regarding Sergeant Washington's conduct but not his complaints regarding the alleged assault. *Id. at 53*. Accordingly, Mr. Robinson did not fully exhaust his claims against the ADC Defendants in that grievance. Furthermore, Mr. Robinson submitted that grievance more than fifteen days after the alleged assault occurred (beyond the deadline for filing an initial grievance complaining about the assault).

---

because Mr. Robinson complained about his failure to receive adequate medical care in this grievance, it is not relevant to the claims raised against the ADC Defendants in this lawsuit.

Finally, in grievance VSM-17-3858, Mr. Robinson alleges that Defendant Gibson retaliated him in an incident that occurred on November 8, 2017. *Id. at 66, 72*. That claim is not related to the failure-to-protect claim Mr. Robinson raises against Defendant Gibson in this lawsuit. Furthermore, Mr. Robinson did not appeal the Warden's decision to the Chief Deputy/Deputy/Assistant Director Deputy Director as required by the ADC inmate grievance procedure.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The ADC Defendants' motion for summary judgment *(Doc. 60)* be GRANTED and judgment be entered in favor of Defendants Payne, Kelley, Byers, Gibson, and Shipman.[9]

2. The Clerk be instructed to close this case.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 22nd day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] The effect of this ruling is that Plaintiff Donell Robinson's remaining claims in this will be dismissed, without prejudice, for failure to exhaust administrative remedies. *Porter v. Sturm*, 781 F.3d 448, 452–53 (8th Cir. 2015) (finding dismissal without prejudice mandatory where inmate failed to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a)).